IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**STEPHEN PIERCE**                                                                                         **PLAINTIFF**

**v.**                                                                    **CIVIL ACTION NO.: 2:20-cv-226-KS-MTP**

**COMMISSIONER OF SOCIAL SECURITY**                                          **DEFENDANT**

## REPORT AND RECOMMENDATION

Plaintiff Stephen Pierce brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security Administration denying his claim for disability insurance benefits. Having considered the parties' submissions, the record, and the applicable law, the undersigned recommends that the Commissioner's final decision be AFFIRMED and this action be DISMISSED with prejudice.

## PROCEDURAL HISTORY

On July 24, 2017, Plaintiff applied for disability insurance benefits alleging disability due to triple heart bypass surgery, fatty liver disease, a fatty spleen, renal cyst disease, a broken back at L4-L5, high blood pressure, and high cholesterol. (Administrative Record [8] at 288). The agency denied Plaintiff's claim, and on June 17, 2019, an Administrative Law Judge ("ALJ") held a hearing. ([8] at 15). During the hearing the ALJ referred Plaintiff to undergo a psychological exam to determine the impact Plaintiff's mental impairments would have on his ability to work. The Plaintiff then requested a supplemental hearing which occurred on March 24, 2020. ([8] at 15). On April 2, 2020, the ALJ issued a decision finding that Plaintiff was not disabled. ([8] at 7-32).

Plaintiff appealed the ALJ's decision to the Appeals Council. On October 13, 2020, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final

decision of the Commissioner. ([8] at 6). Plaintiff now seeks judicial review in this Court under 42 U.S.C. § 405(g).

## ADMINISTRATIVE LAW JUDGE'S DECISION

In his April 2, 2020, decision, the ALJ applied the five-step sequential analysis set forth in 20 C.F.R. § 404.1520(b)-(f)[1] and determined that Plaintiff was not disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 24, 2013, the alleged disability onset date. ([8] at 18). At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar, thoracic, and cervical spine; obesity; depression; anxiety; coronary artery disease; diabetes mellitus, type II; renal cysts; migraine headaches; gastroesophageal reflux disease ("GERD"); and celiac disease.[2] At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 04, Subpart P, Appendix 1. ([8] at 19-20).

---

[1] This analysis requires the ALJ to make the following determinations:
   (1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);
   (2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);
   (3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);
   (4) whether the impairment prevents the claimant from doing past relevant work (if not, a finding of "not disabled" is made);
   (5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).
See 20 C.F.R. §§ 404.1520, 416.92.  The burden of proof rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[2] The ALJ listed Plaintiff's celiac disease as both a severe impairment and as a non-severe impairment. ([8] at 13). This discrepancy is not at issue in this appeal.

The ALJ then examined the record and determined that Plaintiff had the residual functional capacity ("RFC") to "perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)"[3] except with the following limitations:

> [H]e is limited to lifting and carrying 10 pounds occasionally and less than 10 pounds frequently. He is limited to sitting for 6 hours in an 8-hour workday, and he is limited to standing and/or walking for 2 hours in an 8-hour workday. He should have a sit stand option allowing him to change positions for 5 minutes after every 30 minutes he is on task. He should not climb ladders, ropes, or scaffolds, but he can climb ramps and stairs occasionally. He can occasionally balance, stoop, crouch, kneel, and crawl. He can occasionally reach overhead bilaterally, and he can frequently reach in all other directions bilaterally. In addition, he is limited to simple, routine tasks of unskilled work.

([8] at 21). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. ([8] at 28-29). At step five, however, the ALJ found that jobs existed in significant numbers in the national economy which Plaintiff could perform. ([8] at 29). Accordingly, the ALJ found that Plaintiff was not disabled. ([8] at 30).

This Court's review of the Commissioner's decision is limited to determining whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established." *Id*. (citations omitted).

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted).  Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).  If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617.  Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

## ANALYSIS

Plaintiff raises two grounds for relief:

(1) Whether the RFC assessment accounts for all the functional limitations described by the consultative psychologist, Dr. Barrilleaux

(2) Whether the ALJ gave a sufficient justification for rejecting Plaintiff's testimony about his pain

Issue 1: RFC Assessment

Plaintiff argues that while the ALJ stated that he found Dr. Barrilleaux's opinion persuasive, all of the limitations described by Dr. Barrilleaux were not included in Plaintiff's RFC. ([10] at 12). Defendant claims that the ALJ properly accounted for Dr. Barrilleaux's opinion by limiting Plaintiff's RFC to "simple, routine, repetitive tasks." ([16] at 5). For the reasons which follow, the undersigned finds that the ALJ's RFC assessment is supported by substantial evidence.

In 2017, the Social Security Administration revised its regulations regarding the evaluation of medical evidence. These revised regulations are applicable to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520b. Because Plaintiff's claim was filed after March 27, 2017, the Court applies the revised regulations.

Under the revised regulations, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions," including those from treating medical sources. *See* 20 C.F.R. § 404.1520c(a). Instead, an ALJ must evaluate the "persuasiveness" of medical opinions by utilizing five factors: supportability, consistency, relationship with the claimant, specialization, and other factors.[4] *See* 20 C.F.R. § 404.1520c(c). The most important factors are supportability and consistency. *See* 20 C.F.R. § 404.1520c(b)(2). An ALJ is required to explain how he considered the supportability and consistency factors, but need not explain how he considered the other factors in determining the persuasiveness of the medical opinion. *See* 20 C.F.R. § 404.1520c(b)(2).

After the initial hearing, the ALJ referred Plaintiff for a psychological evaluation based on his allegation that he was "sad" sometimes and had previously been diagnosed with anxiety and depression. ([8] at 117). Dr. Barrilleaux conducted the psychological examination of Plaintiff on July 24, 2019. ([8] at 1362-1371). According to Plaintiff, the pertinent portion of Dr. Barrilleaux's report is the summary:

> Based on the current evaluation, Mr. Pierce shows psychological impairment that would be expected to moderately interfere with his ability to perform work related behaviors effectively. He would likely have more difficulty with jobs that required complex or multitask job instructions due to his ADHD issues. His impairment would not be expected to significantly interfere with his relationships

---

[4] Other factors include, but are not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability programs, policies and evidentiary requirements." *See* 20 C.F.R. § 404.1520c(c)(5).

> with others. He is likely able to handle funds independently in his best interest. The best estimation of his prognosis in the next 12 months is that he will likely continue functioning in the same or similar manner.

([8] at 1370). Plaintiff focuses his argument exclusively on the first sentence of this summary and claims that this "limitation would likely preclude plaintiff from performing even unskilled work on a regular and consistent basis." ([10] at 12). However, the remainder of Dr. Barrilleaux's report provided a detailed explanation of the impact Plaintiff's mental limitations would be expected to have on his ability to work.

The ALJ thoroughly considered Dr. Barrilleaux's opinion in determining Plaintiff's RFC and explained:

> The opinion of the psychological examiner, Dr. Barrilleaux, is essentially that the claimant should be limited to simple, routine, repetitive tasks. Although he seems to relate this more to claimant's history of ADHD and learning disorder, he does note that the claimant has some difficulty with concentration, which could also be due to his anxiety and/or depression. Consequently, the undersigned finds that the opinion is consistent with the evidence as a whole and supported by explanation and a thorough and well-documented evaluation and report. Therefore, it is persuasive.

([8] at 28). Substantial evidence supports the ALJ's finding on this issue.

As noted by the ALJ, Plaintiff was described by Dr. Barrilleaux as friendly, cooperative, and a reliable informant. ([8] at 1367). Plaintiff drove himself to the exam. Plaintiff stated that he always got along well with coworkers and that he was never fired. Plaintiff stated that he has no history of problems with the legal system. Plaintiff has good friends with whom he associates regularly and has been married for 25 years. ([8] at 1367).

Plaintiff was described as "neatly dressed with good grooming and hygiene." ([8] at 1504). Dr. Barrilleaux found his speech to be "fluent and goal-directed with a normal rate, rhythm, and volume."  ([8] at 1368). Plaintiff's long-term memory was good, and he was "able to

adequately answer questions about his past personal history." He accurately reported the date, his mailing address, and phone number. He answered 4 simple math problems. Dr. Barrilleaux did find that Plaintiff had a low verbal comprehension and perceptual reasoning score which indicates "specific learning disorders in reading and reading comprehension." ([8] at 1369).

Additional information in Dr. Barrilleaux's report supports the ALJ's finding. In a form titled Medical Assessment of Ability to Do Work-Related Activities (Mental), Dr. Barrilleaux found that Plaintiff would be fair at following work rules and dealing with work stress, and good with relating to coworkers, using judgment, and interacting with supervisors. ([8] at 20, 24, 1362). He found that Plaintiff had an "unlimited" ability to understand, remember, and carry out simple job instructions, a good ability for detailed (but not complex) instructions, and a fair ability for complex job instructions. He rated Plaintiff's ability to maintain personal appearance and demonstrate reliability and behave in an emotionally stable manner as "good." He also found that Plaintiff was capable of managing any social security benefits he received in his own best interest.

Dr. Barrilleaux rated Plaintiff as "good" in his ability to function independently, and "fair" in his ability to maintain attention/concentration. ([8] at 1364-65). Dr. Barrilleaux's opinion in this report does not support Plaintiff's claim that his mental limitation "would likely preclude plaintiff from performing even unskilled work on a regular and consistent basis." ([10] at 12). Additional evidence in the record also supports the ALJ's findings.

The ALJ considered Plaintiff's ability to obtain a driver's license and work at the semi-skilled level in the past despite his learning disorders. The ALJ noted Plaintiff's excellent work record and that he was able to work for one company for 17.5 years. ([8] at 25). The ALJ also

found that Plaintiff was able to perform household chores, manage a checkbook, and shop. ([8] at 20).

Plaintiff does not identify any evidence in the record that he could not perform unskilled work on a regular and consistent basis. Four months after Plaintiff applied for disability, Nurse Practitioner Donna Cobb indicated that she was treating Plaintiff for anxiety and depression which were "managed great with his current medications" and that "all of [Plaintiff's] chronic illnesses are controlled and stable." ([8] at 746, 757).

The ALJ properly interpreted Dr. Barrilleaux's opinion as "essentially that claimant should be limited to simple, routine, repetitive tasks" and properly accounted for such limitations in Plaintiff's RFC. The undersigned finds that the ALJ applied the correct legal standards, and that Plaintiff's RFC is supported by substantial evidence.

Issue 2: Subjective Complaints

Plaintiff argues that the ALJ erred when he rejected Plaintiff's testimony about the effect of his pain on his ability to work. Social Security regulations prescribe a two-step process for evaluating subjective complaints of pain and other symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p. First, an ALJ considers whether there is a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms described by the claimant. If an ALJ determines that such an impairment is present, the ALJ determines the "intensity, persistence, or limiting effect" of the alleged symptoms. An ALJ considers the record as a whole, including both objective and subjective evidence.[5]

---

[5] In addition to objective medical evidence, an ALJ should consider several other categories of evidence, including: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the

Although an ALJ should consider a claimant's subjective complaints, a claimant's own statements regarding his pain and symptoms are not determinative of disability status. 20 C.F.R. § 404.1529. "The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled." *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983).

As part of a seven-and-a-half-page analysis on this issue, the ALJ made the following determination:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

([8] at 22). In making this determination, the ALJ thoroughly considered Plaintiff's medical records and other evidence, such as Plaintiff's daily activities. The ALJ noted that Plaintiff could feed and dress himself, balance a checkbook, and drive a car. ([8] at 23-24). The ALJ also considered that Plaintiff and his wife take care of three foster children in addition to their own children. ([8] at 24).

On May 22, 2018, Nurse Practitioner Brandi Rawls Lockley stated that Plaintiff's degenerative disc disease and hemangiomas[6] can cause pain and recommended that Plaintiff undergo an MRI in order "to further evaluate his back pain and leg pain." ([8] at 574). Notes

---

individual receives or has received for relief of pain or other symptoms; (6) any measure other than treatment the individual uses or has used to relieve pain or other symptoms (e.g. lying on his back, standing for 15 to 20 minutes every hour, or sleeping on a board); and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p.

[6] Hemangiomas are common benign tumors. *Dorland's Illustrated Medical Dictionary* 795 (29th ed. 2000).

from the MRI conducted two months later show "mild to moderate degenerative changes in the cervical and lumbar spine, worse in the thoracic spine."

However, as noted by the ALJ, notes from the MRI of Plaintiff's thoracic spine showed no significant cord compression and only the potential for nerve root impingement. ([8] at 25, 1393). The Nurse Practitioner also found that there was "no compressive pathology" and that Plaintiff would not benefit from surgery. ([8] at 1394). Plaintiff was referred to physical therapy and advised that his weight could be causing some of his pain. ([8] at 1394). As previously mentioned, medical records from a physical exam conducted four months after Plaintiff applied for disability benefits indicate that "all of [Plaintiff's] chronic illnesses are controlled and stable." ([8] at 757).

The Court recognizes that there is some evidence of record which supports Plaintiff's claims. This Court, however, does not resolve conflicts in the evidence; that is left to the discretion of the Commissioner. *Selders,* 914 F.2d at 617. The ALJ found that the evidence of record was more persuasive than Plaintiff's subjective complaints, a determination within the purview of the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) ("Moreover, a factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence."). The ALJ gave sufficient reasons for his findings, and the ALJ's decision is supported by substantial evidence.

## CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, the undersigned finds that the Commissioner's decision is supported by substantial evidence and that no reversible error of law was committed by the ALJ. Accordingly, the Commissioner's final decision be AFFIRMED, and this action be DISMISSED with prejudice.

**NOTICE OF RIGHT TO OBJECT**

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

This 24th day of June, 2022.

s/ Michael T. Parker<br>United States Magistrate Judge